UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAURIE CHAMEIDES,<br><br>                      Plaintiff,<br><br>      -against-<br><br>MOUNT SINAI HEALTH SYSTEM, INC., and LAUDY BURGOS, individually,<br><br>                    Defendants. | **COMPLAINT**<br><br>**Civil Action No.:**<br><br>Jury Trial Demanded |

      LAURIE CHAMEIDES ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for her Complaint against MOUNT SINAI HEALTH SYSTEM, INC. ("Mount Sinai"), and LAUDY BURGOS, individually (collectively as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

**NATURE OF CASE**

      1.      This is a civil action for damages and equitable relief based upon violations that Defendants committed of Plaintiff's rights guaranteed to her by: (i) the race discrimination provisions of 42 U.S.C. § 1981 ("§ 1981"); (ii) the race discrimination provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law 296(1)(a); (iii) the race discrimination provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a); (iv) the disability discrimination provisions of the NYSHRL, N.Y. Executive Law 296(1)(a); (v) the disability discrimination provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a); (vi) the anti-retaliation provisions of §1981; (vii) the anti-retaliation provisions of the NYSHRL, N.Y.C. Admin. Code § 296(7); (viii) the anti-retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(7); (iv) the cooperative dialogue provisions of the

1

NYCHRL, N.Y.C. Admin. Code § 8-107(28); and (x) any other cause(s) of action that can be inferred from the facts set forth herein.

2. Plaintiff, a twenty-two-year employee of Mount Sinai, was subjected to discrimination based upon her Jewish race by her supervisor, Laudy Burgos. After making a good faith complaint about the discrimination, Mount Sinai retaliated against Plaintiff by prohibiting her from working pending proof that she was mentally fit to work, regarding her as having a mental disability. As a result, Plaintiff was forced to take unpaid leave for approximately four months. Upon her return, after Mount Sinai's third-party insurance determined that she did not qualify for short-term disability despite Mount Sinai's insistence that she remain out of work, Mount Sinai stripped her of her long-held role, which was given to her replacement, and forced to take over a new role despite a twenty-two-year employment tenure at Mount Sinai.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

5. At all relevant times herein, Plaintiff worked for Defendants in New York, and is an "employee" entitled to protection as defined by §1981, the NYSHRL, and the NYCHRL.

6. At all relevant times herein, Mount Sinai was and is a New York corporation with its principal place of business located at 150 East 42nd Street, 4th Floor, New York, New York

10017.

7.  At all relevant times herein, Defendant Burgos was and is Mount Sinai's employee and Plaintiff's direct supervisor. In this role, Defendant Burgos supervises the day-to-day activities of Plaintiff.

## BACKGROUND FACTS

8.  Mount Sinai hired Plaintiff, a member of the orthodox Jewish faith, as an inpatient obstetrics social worker in April 2000.

9.  During her impressive tenure with Mount Sinai spanning approximately twenty-two years, Plaintiff created her own program at Mount Sinai, which she ultimately expanded and subsequently served in the leadership role on a full-time basis. Plaintiff subsequently ran this program with an unblemished record until Mount Sinai removed her following her good-faith complaint of religious and race discrimination.

10. In January 2021, Plaintiff was approached by her supervisor, Laudy Burgos, to join the affirmation statement committee. As part of the committee, Plaintiff worked to strengthen the "inclusion statement" that Mount Sinai planned to release to memorialize Mount Sinai's mission statement concerning diversity and inclusion. Plaintiff played a significant role in drafting the statement, proposing language that made clear Mount Sinai's stance against antisemitism, as well as racism against Asians.

11. In April 2021, although the committee originally accepted the language proposed by Plaintiff in the statement, the committee chair informed Plaintiff that Burgos instructed the committee to remove the language pertaining antisemitism and Asians. Plaintiff expressed her confusion with the decision, but the response was that "if antisemitism was included, many other groups would have to be included," and the decision was Burgos's alone.

12. On April 2, 2021, aware that Plaintiff was upset about the decision to extricate antisemitism from the inclusion statement, Carolyn Hutson, a Clinical Instructor at Mount Sinai, requested a meeting with Plaintiff and Burgos.

13. On April 5, 2021, a meeting was held with Hutson, Burgos, and Plaintiff. The intended purpose of this meeting was to "address the struggles with the process," as stated by Hutson. Instead, the meeting turned into an opportunity for Burgos to berate Plaintiff about how she identified according to her race. Witnessed by Hutson, Burgos proceeded to shout at Plaintiff, "You're white! You don't get it. You're white!" Burgos made these comments with the express purpose of offending Plaintiff. Indeed, Plaintiff and Burgos previously had repeated discussions wherein Plaintiff explained to Burgos that she identifies as Jewish and not white, and that historically, Jewish individuals were never considered white. Therefore, Burgos's attempts to verbally beat Plaintiff over the head with incorrect labels of her race were more reflective of racial animosity and abuse rather than simple ignorance.

14. On or around April 23, 2021, Plaintiff made a protected complaint to Mount Sinai's compliance department concerning her belief that she was being discriminated against based on her race and religion. Specifically, Plaintiff spoke with Vincent Serrechia, a Project Manager in Corporate Compliance, who informed her that her complaint of discrimination would be taken very seriously and reach the highest levels of Mount Sinai, including Mount Sinai's System Vice President of Labor Relations and Human Resources, Jeff Cohen.

15. On April 24, 2021, Terri Levine, Senior Director of Mount Sinai Labor Relations, personally reached out to Plaintiff to discuss her complaint to Mount Sinai's compliance department, clearly indicating that Mount Sinai's labor relations department was involved. Later in the process, Levine stated to Plaintiff that while the conduct by Burgos was "inappropriate," it

was not antisemitic. Thereafter, Plaintiff's relationship with Burgos quickly deteriorated.

16. On April 27, 2021, unquestionably after learning of Plaintiff's protected complaint of discrimination, Burgos went on a tirade in the Obstetrics waiting room scolding Plaintiff over an otherwise trivial question regarding the use of a form. Burgos angrily demanded that Plaintiff speak with her in her office immediately, but Plaintiff declined to do so because she did not feel safe considering Burgos's irrational anger.

17. On or around May 28, 2021, Mount Sinai released a hospital-wide email that members of the Mount Sinai community should not tolerate antisemitism and encouraged anyone facing such discrimination to reach out to compliance.

18. On May 28, 2021, Plaintiff emailed Labor Relations to express concern over their antisemitism email because she did exactly what the email instructed victims of discrimination to do, but she was met with deaf ears. During a subsequent call with Levine, Plaintiff made Mount Sinai aware of the distress she was feeling over the continued harassment she was facing due to her efforts to include antisemitism in the inclusion statement.

19. On June 1, 2021, Levine called Plaintiff stating that Mount Sinai was "worried" about her and her "emotional state." As a result, Levine requested that Plaintiff make an appointment with the employee health department. Levine additionally emailed Laudy to state that she was sending Plaintiff for a "fit for duty" exam.

20. On June 2, 2021, after Plaintiff visited employee health, the nurse practitioner informed Plaintiff that she was there for a "psychiatric evaluation," and was prohibited from returning to work without psychiatric clearance. In what could only be described as gaslighting, Mount Sinai – incredibly – turned Plaintiff' humiliation and outrage over the discrimination she faced and Mount Sinai's subsequent decision to sweep it under the rug into something

psychologically being wrong – with her.

21. From June 2, 2021, to September 30, 2021, Mount Sinai kept Plaintiff out of work based upon the Hospital's perception of Plaintiff as "disabled," and psychologically not fit to work. Additionally, in what can only be perceived as an act to remove her from her job position, Mount Sinai's social work department encouraged Plaintiff to apply for disability leave. Indeed, while Mount Sinai prohibited Plaintiff from performing any work and failed to pay her for her forced leave, her application to The Hartford for short-term disability was denied, on the basis that Plaintiff suffered from no disability and could have returned to work on June 2, 2021. Nevertheless, Plaintiff missed four months of paid work. Moreover, despite the fact that Plaintiff had full Paid Time Off to cover this period that Mount Sinai prohibited her from working, Mount Sinai declined her application to use it, resulting in Plaintiff not being paid for four months.

22. On September 30, 2021, upon her return to work, Plaintiff met with Burgos, Assistant Director, Bambi Fisher, and Director, Felice Zilberfein, who presented Plaintiff with a two-page document outlining a new schedule and new job responsibilities. Thus, Plaintiff was being stripped of many of her former job responsibilities and would instead be taking over pediatric palliative care, a program for which she had no training. Plaintiff would also now be required to have weekly supervision from Burgos for the *first time in twenty-two years*.

23. Shockingly, despite Mount Sinai's awareness of Plaintiff's orthodox Jewish faith, her new schedule required her to work longer on Fridays. This, remarkably, changed a schedule – which was put in place to accommodate her religious observance – that had been in place with Mount Sinai for *twenty-two years*.

24. On November 4, 2021, Burgos informed Plaintiff that the program that Plaintiff developed and worked to continuously expand at Mount Sinai, which became nationally known

and respected as the only program of its kind in New York City, would no longer be assigned to her to run. Based on absolutely nothing concerning job performance and substantially motivated by her complaint of discrimination, Mount Sinai informed Plaintiff that it was removing her from her leadership role.

25. Subsequently, on or around November 19, 2021, Burgos provided Plaintiff with a negative performance appraisal, painting her as both difficult and meeting only the minimum of job performance standards.

26. On June 28, 2022, following Mount Sinai's agreement to meet with Plaintiff to discuss resolution of her complaint, Mount Sinai required Plaintiff to use Paid Time Off for the meeting, as punishment for refusing to accept a severance offer that Plaintiff deemed inadequate considering her twenty-two years of employment. Despite the fact that Mount Sinai paid Burgos to attend the meeting and did not require her to take Paid Time Off, Mount Sinai retaliated against Plaintiff by forcing her to use Paid Time Off on the proffered explanation that the meeting was "optional" for Plaintiff. Burgos wrote an email on this same date to Plaintiff that stated: "The mediation was not a meeting that Mount Sinai required you to attend. It is my understanding that both parties agreed to the mediation and that you were free to refuse to participate." Therefore, Mount Sinai treated Plaintiff less well than other employees for her complaint and refusal to accept an inadequate severance.

### FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
*Race Discrimination in Violation of §1981*

27. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

28. 42 U.S.C. § 1981 prohibits employers from discriminating against any individual based on the individual's right to make and enforce contracts because of the individual's race.

29. As described above, Defendants are employers within the meaning of §1981, while Plaintiff is an employee within the meaning of §1981.

30. As also described above, Defendants discriminated against Plaintiff on the basis of her race, in violation of the §1981.

31. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation §1981, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

32. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of §1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

33. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of §1981, for which Plaintiff is entitled to an award of punitive damages.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANT**
*Race Discrimination in Violation of the NYSHRL*

34. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35. NYSHRL § 296(1)(a) prohibits employers, because of an employee's race, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

36. As described above, Defendants are employers within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

37. As also described above, Defendants discriminated against Plaintiff on the basis of her race in violation of the NYSHRL.

38. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

39. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*Race Discrimination in Violation of the NYCHRL*

40. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

41. NYCHRL § 8-107 prohibits employers, because of an employee's race, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

42. As described above, Defendants discriminated against Plaintiff by treating her less well on the basis of her race, in violation of the NYCHRL.

43. As also described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

44. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

45. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Disability Discrimination in Violation of the NYSHRL*

46. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

47. NYSHRL § 296(1)(a) prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

48. As described above, Defendants are employers within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

49. As also described above, Defendants discriminated against Plaintiff on the basis of her disability in violation of the NYSHRL.

50. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

51. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Disability Discrimination in Violation of the NYCHRL*

52. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. NYCHRL § 8-107 prohibits employers, because of an employee's disability, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

54. As described above, Defendants discriminated against Plaintiff by treating her less well on the basis of her disability, in violation of the NYCHRL.

55. As also described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

56. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

57. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of §1981*

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59. 42 U.S.C. § 1981 prohibits employers from retaliating against any individual based on the individual's complaint of race discrimination.

60. As described above, Defendants are employers within the meaning of §1981, while Plaintiff is an employee within the meaning of §1981.

61. As also described above, Defendants retaliated against Plaintiff on the basis of her complaint of race discrimination, in violation of the §1981.

62. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation §1981, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

63. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of §1981, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of §1981, for which Plaintiff is entitled to an award of punitive damages.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the NYSHRL*

64. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

65. NYSHRL § 296(1)(e) prohibits employers to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because she has filed a complaint, testified or assisted in any proceeding under this article.

66. As described above, Defendants are employers within the meaning of the NYSHRL, while Plaintiff is an employee within the meaning of the NYSHRL.

67. As also described above, Defendants discriminated against Plaintiff on the basis of her good faith complaint opposing discrimination by Defendants.

68. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

69. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

**EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANT**
*Retaliation in Violation of the NYCHRL*

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71. NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

72. As described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

73. As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendants retaliated against Plaintiff by terminating Plaintiff's employment.

74. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

75. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

76. Defendants' unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Engage in Cooperative Dialogue in Violation of the NYCHRL*

77. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

78. NYCHRL § 8-107(28) prohibits employers from refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation related to a disability. NYCHRL §8-107(28) additionally requires that upon reaching a final determination at the conclusion of a cooperative dialogue, the employer shall provide an employee requesting an accommodation with a final written report.

79. As described above, Defendants refused or otherwise failed to engage in a cooperative dialogue within a reasonable time despite having notice that Plaintiff may require such an accommodation based on a disability, in violation of the NYCHRL.

80. As also described above, Defendants failed to issue Plaintiff a final written report at the conclusion of the cooperative dialogue process, in violation of the NYCHRL.

81. As also described above, Defendants are employers within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

82. As a direct and proximate result of Defendants' failure to engage in a cooperative dialogue in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

83. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

## DEMAND FOR A JURY TRIAL

84. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests:

a. A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned New York State laws;

      b.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

      c.      An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

      d.      An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendants' unlawful conduct;

      e.      An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations and loss of career fulfillment in connection with Plaintiff's claims;

      f.      An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

      g.      An award of punitive damages to the extent permitted by law, commensurate with Defendants' ability to pay;

      h.      An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

      i.      An award of pre-judgment and post-judgment interest, as provided by law; and

     j.     Granting Plaintiff such other and further relief as this Court finds necessary and proper.

Dated: White Plains, New York
       September 8, 2022

                                                  Respectfully submitted,

                                                  Stevenson Marino LLP
                                                  *Attorneys for Plaintiff*
                                                  445 Hamilton Avenue, Suite 1500
                                                  White Plains, New York 10601
                                                  (212) 939-7229

                                   By:    _____
                                                  Jeffrey R. Maguire